Application of M. B. KIRKPATRICK and Union Oil Company of California for an Extension of Oil and Gas Lease ADL–00482, Appellants,

and

Standard Oil Company of California, Intervener,

v.

COMMISSIONER, DEPARTMENT OF NATURAL RESOURCES, and State of Alaska, Appellees.

No. 388.

Supreme Court of Alaska.

April 8, 1964.

D. A. Burr, Burr, Boney & Pease, Anchorage, for appellants.

Robert C. Erwin, Dist. Atty., and Richard L. McVeigh, Asst. Dist. Atty., Anchorage, for appellees.

Eugene F. Wiles, Plummer, Delaney & Wiles, Anchorage, for intervener.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

This case deals with the effect of the Alaska Statehood Act and statutes enacted by the Alaska State Legislature, on oil and gas leases of Alaska lands issued by the United States Department of the Interior while Alaska was a Territory of the United States.

Prior to statehood, federal law provided that sections 16 and 36 of each township in the Territory of Alaska were reserved from sale or settlement for the support

of common schools.[1] The law was amended in 1953[2] to provide that all deposits of oil and gas in the reserved lands, together with the lands containing such deposits, should be subject to disposition under the Mineral Leasing Act of February 25, 1920.[3] The Secretary of the Interior was authorized by the Mineral Leasing Act to issue leases to lands known or believed to contain oil or gas deposits. As to lands which were not within any known geological structure of a producing oil or gas field, a lease without competitive bidding (commonly referred to as a noncompetitive lease) could be issued to a qualified applicant on a first-come, first-served basis for a term of five years.

On July 1, 1956 a noncompetitive oil and gas lease covering certain school lands in the Territory was issued by the Secretary of the Interior to appellant, M. B. Kirkpatrick, who later assigned the lease to appellant, Union Oil Company. At the time the lease was issued the Mineral Leasing Act provided, by virtue of a 1954 amendment, that at the expiration of the initial five year term of any noncompetitive lease, the holder should be entitled to a single five year extension of the lease, "unless then otherwise provided by law."[4]

Alaska became a State of the Union on January 3, 1959.[5] Under the Statehood Act the lands reserved for support of schools, including those lands covered by appellant's lease, were granted to the new state.[6] In 1961 appellant applied to state officials for a five year extension of its federal lease. The application was not granted. The Director of the State Division of Lands issued a decision holding that since the lands involved had been transferred to the state, the lease would expire at the end of its initial five year term. However, he further held that since appellant would have been entitled to an extension if the federal government were still the lessor, that appellant was entitled under state regulations to a preference right to a state lease on the same lands. Appellant submitted its application for a state lease and one was issued for a term of two years effective July 1, 1961.

Maintaining its position that it was entitled to a five year extension of its federal lease, appellant applied to the Director of Lands for a reconsideration of his decision. Upon reconsideration, the decision was affirmed. Appellant then appealed to the Commissioner of Natural Resources who affirmed the ruling of the Director. An appeal was next taken to the superior court where the Commissioner's decision was affirmed. Appellant now appeals to this court.

The federal statute previously mentioned (48 U.S.C.A. § 353), which reserved certain lands in Alaska for the support of schools and which was amended in 1953 to authorize the issuance of oil and gas leases with respect to such lands, was further amended in 1953 by the following language:

"Upon the transfer to any future State erected out of the Territory of Alaska of title to any of the reserved lands, the provisions of this [amendment] section shall cease to apply to the reserved lands title to which is so transferred. Any lease, permit, or contract made pursuant to this [amend-

1. Act of March 4, 1915, ch. 181, § 1, 38 Stat. 1214, as amended, 48 U.S.C.A. § 353 (1952).

2. Act of Aug. 5, 1953, ch. 323, 67 Stat. 364, 48 U.S.C.A. § 353 (Supp.1963).

3. Act of Feb. 25, 1920, ch. 85, 41 Stat. 437 (§ 17 at 443), 30 U.S.C.A. § 226 (1942).

4. Act of July 29, 1954, ch. 644, § 2, 68 Stat. 584. The five year extension applied only to lands, such as those involved in this case, which were not within the known geologic structure of a producing oil or gas field.

5. Act of July 7, 1958, 72 Stat. 339 (Alaska Statehood Act).

6. Act of July 7, 1958, § 6(k), 72 Stat. 343.

ment] section which is in effect at the time of any such transfer of title to the lands covered by the lease, permit, or contract shall not be terminated or otherwise affected by such transfer of title; but all right, title, and interest of the United States under such lease, permit, or contract, *including any authority to modify its terms and conditions that may have been retained by the United States,* shall vest in the State to which title to the lands covered by the lease, permit, or contract is transferred.[7] (emphasis added)

Appellant construes the foregoing language, and particularly the italicized portion, as having given the Secretary of the Interior the right to modify leases as to the provision for a five year extension. Appellant argues, however, that such right did not vest in the State of Alaska, as the language of the statute says it should, because 48 U.S.C.A. § 353 was repealed in its entirety by section 6(k) of the Statehood Act which contained no provision for modifying the terms and conditions of oil and gas leases.[8] Appellant concludes that it was the intent of Congress in enacting section 6(k) of the Statehood Act to preserve all existing terms and conditions of federal leases, including the right of a lessee under the federal Mineral Leasing Act to obtain a five year extension of its lease at the end of the initial five year term.

Appellant's argument is untenable, because it is based upon the erroneous assumption that 48 U.S.C.A. § 353 granted or recognized a right of the Secretary of the Interior to modify the terms and conditions of a lease as to renewal provisions. The part of the statute which appellant must rely upon to sustain its position consists of the words: "including any authority to modify its terms and conditions that may have been retained by the United States." These words do not constitute a grant of authority to modify leases, nor do they expressly recognize that any such authority exists. The plain meaning of those words is that *if* the United States had retained any authority to modify a lease, then that authority— assuming it existed—would be vested in the State of Alaska. Appellants have not pointed to any specific federal statute or regulation or any provision in appellant's lease wherein the United States, acting through the Secretary of the Interior, retained the authority to modify the lease by refusing to grant an application for a five year extension.

■ The solution to the problem raised on this appeal is not to be found solely in a consideration of 48 U.S.C.A. § 353. Consideration must also be given to the federal Mineral Leasing Act, the Alaska Statehood Act, and the Alaska Land Act which was enacted by the Alaska legislature following statehood. Under the Mineral Leasing Act appellant was entitled to a five

---

7. Act of Aug. 5, 1953, ch. 323, 67 Stat. 364, 48 U.S.C.A. § 353 (Supp.1963).

8. Section 6(k) of the Alaska Statehood Act (72 Stat. 343) provides:
"Grants previously made to the Territory of Alaska are hereby confirmed and transferred to the State of Alaska upon its admission. Effective upon the admission of the State of Alaska into the Union, section 1 of the Act of March 4, 1915 (38 Stat. 1214; 48 U.S.C., sec. 353), as amended, and the last sentence of section 35 of the Act of February 25, 1920 (41 Stat. 450; 30 U.S.C., sec. 191), as amended, are repealed and all lands therein reserved under the provisions of section 1 as of the date of this Act shall, upon the admission of said State into the Union, be granted to said State for the purposes for which they were reserved; but such repeal shall not affect any outstanding lease, permit, license, or contract issued under said section 1, as amended, or any rights or powers with respect to such lease, permit, license, or contract, and shall not affect the disposition of the proceeds 'or income derived prior to such repeal from any lands reserved under said section 1, as amended, or derived thereafter from any disposition of the reserved lands or an interest therein made prior to such repeal."

year extension of the lease at the expiration of the initial five year term, "unless then otherwise provided by law." [9] Thus, appellant's right to an extension was subject to law that existed at the time the initial term of the lease expired. At that time, on June 1, 1961, the law pertaining to appellant's lease had been changed. The lands subject to the lease had been granted to the State of Alaska by the Statehood Act. The provisions of the federal Mineral Leasing Act were no longer applicable, since 48 U.S.C.A. § 353 which had made such lands subject to the Mineral Leasing Act had been repealed by section 6(k) of the Statehood Act. Section 6(k) also provided that such repeal "shall not affect any outstanding lease" issued under 48 U.S.C.A. § 353, or "any rights or powers with respect to such lease." [10] One of the powers with respect to appellant's lease was the governmental power to change the law respecting the granting of extensions. That power, vested in Congress prior to statehood and preserved by section 6(k), became vested in the state when the lands subject to the lease were granted to the state as its property.

■ The state has exercised its power to change the law respecting lease extensions by the Alaska Land Act and by regulations adopted under its authority. The Act provides that school lands, such as those involved here, shall be leased by competitive bidding. [11] Regulations in effect when the initial term of appellant's lease expired provided that federal leases, such as the one involved here, should terminate upon the expiration of the initial five year term, but that the lessee should have a preference right to a state lease on the same lands for an additional two

years where the lands had been classified as competitive. [12] Appellant received a two year state lease, which is all that it was entitled to under state law and regulations. It cannot complain that it has been denied a vested right to a five year extension of its federal lease, since at the time it accepted the federal lease the renewal right was subject to being changed by law at any time prior to the expiration of the initial term.

Appellant next contends that if the Alaska Land Act is controlling, it should be construed as authorizing a five year state lease, rather than one for only two years. Appellant relies on that part of the Act which provides:

"Upon the expiration of the initial five year term of a noncompetitive lease maintained in accordance with applicable requirements and regulations, the record title holder is entitled to a single extension of the lease, unless otherwise provided by law. A noncompetitive lease on lands not determined to be competitive lands shall be extended for a period of five years and so long thereafter as oil or gas is produced in paying quantities. A noncompetitive lease on lands determined to be competitive lands shall be extended for a period of two years and so long thereafter as oil or gas is produced in paying quantities." [13]

Appellant argues that the quoted language regarding a two year lease extension is not applicable to its situation, because the lands leased by it were not "determined to be competitive lands" by the Commissioner of Natural Resources under his statutory authority to make such a determination, [14] but instead were declared

9. Act of July, 29, 1954, ch. 044, § 2, 68 Stat. 584.

10. Act of July 7, 1958, § 6(k), 72 Stat. 343.

11. AS 38.05.180(a).

12. 11 Alaska Adm.Code § 515.52 at 1.354; §§ 508.32, 508.33 at 1.330 (1960), [now,

§ 515.52 at 1.360; §§ 508.32, 508.33 at 1.335 (1962)].

13. AS 38.05.180(c).

14. AS 38.05.180(a) provides in part: "All tide and submerged lands, mental health lands, school lands, and university lands shall be leased by competitive bid-

by the legislature to be competitive. Appellant's position is that the language relating to "lands *not* determined to be competitive" is controlling and therefore that its lease, which was noncompetitive when originally issued, should be extended for five years.

■ It is highly questionable that any of the above quoted language from AS 38.05.180(c) pertains to the situation at hand. The language is found in one of several sections of Article 6 of the Land Act which deals with the leasing of mineral lands of the state.[15] Read in the context of Article 6, it becomes apparent that the quoted provision as to extensions relates only to leases issued by the state under the authority of the Land Act, and is not pertinent with respect to prestatehood federal leases.

The inapplicability of AS 38.05.180(c) is also apparent from appellant's view that the wording "lands determined to be competitive lands" contemplates a determination to be made by the Commissioner of Natural Resources. If that is so, then logically the words "lands *not* determined to be competitive lands" would contemplate a situation where certain lands may be, but have not been, determined by the Commissioner to be competitive. The language of this section is not directed to a situation where lands have been classified as competitive by the Act itself, and where there is no room for the exercise of the Commissioner's authority to make classifications.

We conclude that AS 38.05.180(c), relating to extensions of state oil and gas leases, has no application to federal leases of lands granted to the state by the Statehood Act. Appellant has no right to an extension of its federal lease, but only a

ding, and whenever oil or gas is discovered in commercial quantities, the commissioner shall determine the extent of the area of lands in addition to tide, submerged, mental health lands, school, or university lands in the same general area of the discovery well which, by

right, which it has been granted under the Commissioner's regulations, to a state lease of a period of two years following expiration of the original .five year term of its federal lease.

The judgment is affirmed.

reason of the discovery, the commissioner reasonably believes to be capable of producing oil or gas, and the additional lands shall be leased by competitive bidding."

